J-A16016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LORETTA P. JABLONOWSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD P. JABLONOWSKI | : | |
| | : | |
| Appellant | : | No. 1481 MDA 2018 |

Appeal from the Decree Entered August 15, 2018
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2012-FC-40822

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.:                **FILED JULY 17, 2019**

Edward P. Jablonowski (Husband) appeals from the decree in divorce attendant to the dissolution of his marriage to Loretta P. Jablonowski (Wife). The trial court entered the final decree following an order resolving the parties' economic claims.  After careful review, we affirm.

> Wife and Husband were married on June 21, 1985, and separated in June 2012.  Four children were born of the marriage and are all now emancipated adults.
>
> Wife was 57 years old at the time of [the] hearing, a high school graduate, with a history of employment at the family business, E-Jay Oil and Tire, and past training as an emergency room technician.  At the time of [the] hearing Wife was employed as a hotel housekeeper manager.  Wife's medical history includes thyroid cancer and subsequent pharmacotherapy to treat her condition.  Wife testified that she works forty hours per week, earns an average of $320.00 per week, and has no health insurance or retirement through her employer.  During the marriage, Wife was the primary caretaker of the children.

---

* Former Justice specially assigned to the Superior Court.

> Husband was 61 years old at the time of [the] hearing. He testified that he worked at E-Jay Oil and Tire since 1973, when the business was wholly owned by Husband's late father. Husband's medical history includes heart by-pass surgery and medication. In 1982 and prior to marriage, Husband obtained a 40% interest in the business from his father. In 1995, Husband obtained an additional 15% interest as a gift from his father. In 2007, Husband obtained the remaining 45% interest in the business by purchase from his brother for the sum of $63,000.

Trial Court Opinion, 5/23/18, at 2-3.

On June 13, 2012, Wife filed a complaint in divorce. On September 7, 2016, the trial court appointed Donald W. Jensen, Esquire (Master), as the Master in divorce. The Master held a hearing on the parties' equitable distribution claims on January 19, 2017 and May 18, 2017, and issued a report and recommendation on June 1, 2017. Both parties filed exceptions to the Master's report and recommendation, which they argued before the trial court on January 29, 2018. On February 20, 2018, the trial court entered an order adopting the Master's report and recommendation. Husband filed a notice of appeal on March 19, 2018. This Court, determining that a final decree in divorce had not yet been entered, quashed Husband's appeal as interlocutory on July 30, 2018.

On August 15, 2018, the trial court entered the final decree in divorce. Husband filed a timely notice of appeal challenging the trial court's order adopting the Master's report and recommendation. On appeal, Husband raises the following issues:

A. The trial court erred when it found that the value of E. Jay Oil Tire Co. is $460,798.00 . . . [.]

B. The trial court erred when it failed to find that the business purchased, but for $5,000 cash, with the business' premarital/nonmarital assets the 45% interest owned by [Husband's] brother from him, making 100% except for the $5,000.00 cash payment, of the business nonmarital property, therefore not subject to equitable distribution.

C. Assuming arguendo that 45% is determined to be marital, the trial court failed to consider the costs associated with a sale of the business, including, but not limited to the tax consequences, sales commission, legal fees and all other costs associated with the sale of the business when awarding [Husband] his share of the business.

D. Assuming arguendo that 45% is determined to be marital, the trial court failed to recommend in the event that [Husband] is unable to purchase [Wife's] interest in the business that the business be place[d] for sale and that 45% of the net proceeds be divided equally between the parties.

E. Trial Court erred when it found that the 1992 Toyota Camry has a value of $500.00.

F. Trial Court erred when it found that used and antiquated stereo and gaming equipment has a value of $10,000.00 and that the guitars had a total value of $10,000.00 and a marital value of $9,000.00.

G. Trial Court erred when it recommended that [Husband] reimburse [Wife] $2,000.00 for her share of the Master's fee she ha[d] previously paid.

Husband's Brief at 4-5 (suggested answers omitted).

Husband's issues relate to the trial court's equitable distribution order.

Preliminarily, we recognize:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which

requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Carney v. Carney*, 167 A.3d 127, 131 (Pa. Super. 2017) (citations omitted). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility, and this Court will not reverse those determinations as long as they are supported by the evidence. *Sternlicht v. Sternlicht*, 822 A.2d 732, 742 (Pa. Super. 2003).

In his first four issues, Husband disputes the trial court's assessment of his business. The Master recommended that Husband's business be valued at $460,798.00 based on the testimony of Wife's experts: James N. Dragotto and Dr. Murli Rajan, who used a market value approach in determining the fair market value of the business.[1] The trial court adopted the Master's recommendation, noting that the expert evidence proffered by Wife was uncontradicted. Husband, however, asserts that the trial court erred by accepting a valuation that used the market value approach, by determining that Husband purchased the business with all but $5,000.00 in marital funds,

---

[1] Experts use three different approaches to calculate the value of a business: asset-based approach, market approach, and income approach. Wife's Exhibit 5, at 1-2.

- 4 -

and for failing to consider the costs associated with selling the business when determining its value.

In his fifth and six issues, Husband challenges the values assigned to several marital assets, including a 1992 Toyota Camry, stereo and gaming equipment, and guitars. The trial court found the evidence and testimony presented by Wife to be more credible, and adopted the values Wife assigned to those assets. Husband objects to those values, claiming that Wife's values are "guestimates," at best, and the trial court erred by adopting them.

Finally, in his seventh issue, Husband alleges that the trial court erred by ordering him to reimburse Wife for her portion of the Master's fee. In particular, Husband suggests that, based on the distribution of the marital estate, Wife has "sufficient funds to assume the $2,000.00 Master's fee." Appellant's Brief at 66. Likewise, Husband contends that the trial court erred by failing to consider Husband's ability to afford Wife's portion of the Master's fee. *Id.*

After thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Julia Munley, sitting as the trial court, we conclude that Husband's issues on appeal do not merit relief. The trial court has comprehensively and properly expressed its reasons for adopting the Master's report and recommendation with regard to the value of Husband's business, the personal property items in dispute, and Husband's payment of Wife's portion of the Master's fee. Accordingly, we

adopt the trial court's opinion as our own in disposing of this appeal.[2]  The parties shall attach a copy of the May 23, 2018 opinion in the event of further proceedings relevant to this matter.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/17/2019

_____

[2] We note that Judge Munley issued her May 23, 2018 opinion in response to Husband's first appeal, filed on March 19, 2018, which this Court quashed as interlocutory.  Thus, Judge Munley's discussion of waiver is inapplicable and not a part of our disposition of this appeal filed by Husband on September 5, 2018.  **See** Trial Court Opinion, 5/23/18, at 1.  Judge Munley did not direct Husband to file a Rule 1925(b) concise statement after he filed the September 5, 2018 appeal, and on November 27, 2018, Judge Munley issued an order stating "the reasons for this Court's decision regarding equitable distribution claims can be found in the previously filed Order and Opinion dated May 23, 2018 by the undersigned."

Circulated 06/25/2019 04:48 PM

LORETTA P. JABLONOWSKI,  : IN THE COURT OF COMMON PLEAS
Plaintiff  : OF LACKAWANNA COUNTY
 :
vs.  : CIVIL ACTION – LAW
 : FAMILY COURT DIVISION
EDWARD P. JABLONOWSKI,  :
Defendant  : No. 2012-FC-40822
 : 488-MDA-2018

May 23, 2018  MUNLEY, JULIA, J.

## OPINION PURSUANT TO RULE 1925(a)

This is a divorce matter with equitable distribution claims. On February 20, 2018, this Court issued an Order regarding cross-filed exceptions to the Master in Divorce's Report and Recommendations. An appeal was filed by Defendant on March 19, 2018. This Court entered an Order to File and Serve a Statement of Errors Complained of on Appeal Pursuant to Pa. R. A. P. 1925(b) on March 23, 2018 to clarify the issues being raised by Defendant. Defendant previously raised nine exceptions to the Master's Report and Recommendations before this Court with most of the exceptions focusing on the valuations and awards of certain personal property, including a 1992 Toyota Camry, a snowmobile trailer, guitars, a pool table, stereo and gaming equipment, and a weight machine. Defendant's exception to the valuation of the family business includes ten sub-exceptions.

Defendant failed to timely respond to this Court's 1925(b) Order or request an extension of time to do so. Pursuant to Pa. R. A. P. 1925(b)(3)(vi), issues not included in the Statement of Errors are waived.

Despite the waiver by Defendant, this Court provides the following reasons for its Order addressing all of the issues raised in Defendant's Exceptions to the Master's in Divorce Report and Recommendation [sic] and argued in his Memorandum in Support.

## I.    FACTUAL AND PROCEDURAL HISTORY

A Complaint in Divorce was filed June 13, 2012 by Plaintiff Loretta P. Jablonowski ("Wife"). Donald W. Jensen, Esq. was appointed Master in Divorce ("Master") on September 7, 2016 upon Wife's Motion. A hearing before the Master where testimony was taken occurred on January 19, 2017 and May 18, 2017. The Master's Report and Recommendations were filed on June 1, 2017 and the parties cross-filed exceptions, memoranda, and supplemental memoranda. Oral arguments on the exceptions were heard by this Court on January 29, 2018. On February 20, 2018, this Court entered an Order dismissing the exceptions filed by the parties, and upholding the Master's Report and Recommendations. Defendant Edward P. Jablonowski ("Husband") appealed this Court's February 20, 2018 Order.

Wife and Husband were married on June 21, 1985, and separated in June 2012. N.T. 5/18/2017 at 3. Four children were born of the marriage and are all now emancipated adults. Id. at 3-4.

Wife was 57 years old at the time of hearing, a high school graduate, with a history of employment at the family business, E-Jay Oil and Tire, and past training as an emergency room technician. Id. at 4-5, 70. At the time of hearing Wife was employed as a hotel housekeeping manager. Id. Wife's medical history includes thyroid cancer and subsequent pharmacotherapy to treat her condition. Id. at 5-6. Wife testified that she works forty hours per week, earns an average of $320.00 per week, and has no health insurance or retirement through her employer. Id. at 6-9. During the marriage, Wife was the primary caretaker of the children. Id. at 7-8.

Husband was 61 years old at the time of hearing. Id. at 229. He testified that he worked at E-Jay Oil and Tire since 1973, when the business was wholly owned by Husband's late father. Id. at 230. Husband's medical history includes heart by-pass surgery and medication. Id. at 229-230. In 1982 and prior to marriage, Husband obtained a 40% interest in the business from his father. Id. at 231-232. In 1995, Husband obtained an additional 15% interest as a gift from his father. Id. at 231-232. In 2007, Husband obtained the remaining 45% interest in the business by purchase from his brother for the sum of $63,000. Id. at 233.

Husband takes exception to the Master's valuation of the family business. The Master valued the business at $460,798.00, based on the testimony of Wife's experts, James N. Dragotto and Dr. Murli Rajan, who used a market value approach in determining the fair market value of the business. Master's Report and Recommendations at 7. Husband did not call any experts regarding the business valuation and relied on his personal beliefs that the business was overvalued.

In addition to the business valuation exceptions, the assets in contention raised by Husband in his exceptions include several vehicles and other miscellaneous items of personal property. Defendant's Exceptions, ¶¶ 2-7. Husband also objected to the cash award to Wife and the award of Master's fees advanced by Wife. Defendant's Exceptions, ¶¶ 8-10. For the reasons set forth below, this Court denied Husband's exceptions and upheld the findings of the Master.

## II. DISCUSSION

It is well settled law in the Commonwealth that a master's findings are appealable by either party and such appeal is a *de novo* review by the Court. Arcure v. Arcure, 281 A.2d 694, 695 (Pa. 1971). While a master's findings are not absolutely binding on the court, they are entitled to significant weight. Moran v. Moran, 839 A.2d 1091, 1095 (Pa. Super. 2003). A master's report and recommendation, "although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." Id. (citations omitted). Absent a clear showing that a master's recommendation is erroneous, the recommendation should not be set aside. Mintz v. Mintz, 392 A.2d 747, 749 (1978). "To set the recommendation aside would be to undermine the master system and would be questionable in light of the fact that the master heard and saw the witnesses." Id.

Husband's exceptions and the reasons for denying his exceptions follow.

### a. *The Master Did Not Err When He Found That the Value of E-Jay Oil and Tire Co. Is $460,798.00*

Husband raised ten separate sub-arguments in his exceptions as to why the Master erred in accepting methodology and conclusions of Wife's economic experts regarding the value of the business. Defendant's Exceptions, ¶ 1a-1j. Rather than address each component of Husband's main argument separately, the Court has scrutinized the ten sub-arguments and categorized them into three areas to avoid redundancy:

> 1) That the Master erred in accepting the methodology used by Wife's experts in valuing the business and that the value of the business was inflated for various reasons;

2) That the Master erred in finding that 45% of the business was martial property; and

3) That the Master failed to recommend selling the business as an alternative if Husband was unable to purchase Wife's interest in the business or consider the costs of selling the business.

The Master did not err in adopting the value of the business as determined by Wife's experts. In denying Husband's exceptions, this Court found the Master's recommendations to be sound and because the expert opinions of Wife's Experts, Dr. Rajan and Mr. Dragonetti, were unrefuted.

In addressing Husband's first seven sub-arguments as to why the Master erred regarding the valuation of the family business, this Court is mindful that:

> The Divorce Code does not specify a particular method of valuing assets. Thus, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. When determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property. Where the evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented. A trial court does not abuse its discretion in adopting the only valuation submitted by the parties.

Childress v. Bogosian, 12 A.3d 448, 456 (2011) (citing Biese v. Biese, 979 A.2d 892, 895 (Pa.Super.2009)(internal citations, quotations, and formatting marks omitted).

The trial court is given great discretion to evaluate the parties' valuation methods and determine which is most reliable. Carney v. Carney, 167 A.3d 127, 132 (2017).

The Master noted that "the most valuable asset of the parties is the interest of E Jay Oil & Tire Co...." and only Wife retained experts to assess and value the business. Master's Report and Recommendations at 10. In review of the transcript of the

proceedings, Husband presented no competent evidence as to valuation of the business whatsoever. Husband's business valuation exceptions are thus completely unsupported by any evidence of record.

Husband called Michael Cunningham, his personal and business accountant, during his case in chief. Mr. Cunningham's testimony does nothing to further Husband's arguments. Rather, Mr. Cunningham's testimony supports the methods used by Wife's experts and the reasons for using such methods.

In his exceptions, Husband argues the Master erred in adopting Wife's experts' valuation because the Master failed to consider that Husband obtained the remaining 45% share of the business from his brother in 2007 for $68,000. Defendant's Exceptions, 1e. To the contrary the Master clearly considered this fact, Master's Report and Recommendations at 5-6.

Mr. Cunningham testified that he was not authorized to talk about value of business shares. N.T. 05/18/2017 at 218. Moreover, Mr. Cunningham was not qualified or offered by Husband as an expert witness and the Master heard no testimony regarding the valuation of the business from Mr. Cunningham. Id. at 172, 218.

Husband suggested in his testimony that the company is a one-man business, Id. at 299-300. However, the Master heard other evidence from Husband where he testified that he was "still doing a decent volume of business," that he employed up to three technicians and an office worker. Id. at 286-287, 295-296.

The valuation evidence offered by Wife was uncontradicted. This Court finds no error in the Master adopting the value assigned to the family business by Wife's experts.

A divorce master and a trial court have discretion to accept or reject an expert's testimony. Childress, 12 A.3d at 456 (citing Vargo v. Schwartz, 940 A.2d 459, 467 (Pa. Super. 2007)). The record indicates the Master spent an entire day hearing the testimony of Wife's two experts on the issue of valuation of the business. One expert, Dr. Murli Rajan, a Ph.D in finance with a background and emphasis on valuations of business had been accepted as an expert in both state and federal courts previously in the field of valuation. Wife's other financial expert, Mr. James Dragotto, earned an M.B.A. with a concentration in economics and finance and is a licensed attorney in Pennsylvania. Mr. Dragotto had prepared business valuations previously and had been accepted as an expert witness on a number of occasions in state court testifying as to business valuations. A review of the transcript provides no reason to reject the methodology and conclusions submitted by Dr. Rajan and Mr. Dragotto adopted by the Master.

Mr. Dragotto reviewed the available records and issued an expert report in tandem with Dr. Murli Rajan, which was admitted into evidence at the time of the hearing. Both witnesses were offered and admitted as experts in the field of business valuation in this case. N.T. 01/19/2017 at 26-27, 43. Mr. Dragotto reviewed the business' tax returns, payroll records, and an Order from the Master in Support indicating that business income had been understated. His function was to determine if those documents could be relied upon for business valuation purposes. Id. Mr. Dragotto concluded that these records were not reliable and that other approaches to valuation would need to be used. Id. at 46.

In his testimony, Dr. Rajan focused on the method of valuing the business based on Mr. Dragotto's review. Id. at 129. Dr. Rajan explained that there are three main approaches to valuing a business: the income approach, the asset approach, and the

market approach, along with some variations. Id. at 130-133. Dr. Rajan testified that based on the lack of reliability of the financial records of the business, the income approach and the asset approach could not be used. Id. at 135. As a result, Dr. Rajan provided an opinion employing the market approach, using the guideline of a publicly traded company as the starting point to the valuation and applying a 30% discount due to the lack of marketability. Id. at 134-137, 139. Income numbers were unreliable according to Dr. Rajan and Mr. Dragotto. Id. at 135, 145. Moreover, Dr. Rajan and Mr. Dragotto did not have the values of the business assets, including inventory. Id. Based on the market approach, Dr. Rajan provided a reasonable range of business value from $460,798 to $577,977, finding it "flagitious" to suggest a specific pinpoint of value. Id. at 139-140. The Master adopted the low end of the range based on the size, character, and operations of the business. Master's Report and Recommendations at 7.

In his exceptions, Husband argues that particulars of the scale of the business were ignored; that the asset-based approach should have been used; and that the various assets and liabilities of the business should have been considered. Defendant's Exceptions, ¶¶ 1a, 1c, 1d, 1g, 1h. In adopting the low end of Wife's experts' range, the Master did indeed consider the size and scale of the business.

Further, the application of the market-based approach used by Wife's two experts was validated by the testimony of Husband and Husband's witness, Mr. Cunningham, on the unreliability of the business records. Mr. Cunningham indicated that the business was paying taxes as a corporation for many years even though it was never registered as a corporation by the Department of State. N.T. 05/18/2017 at 177-178. Mr. Cunningham described the business's accounting system as archaic. Id. at 192. Mr. Cunningham also

described the issues with obtaining a business inventory from Husband. Id. at 193-194.

Mr. Cunningham acknowledged that the business kept two sets of records. Id. at 217-219. It is also clear from the testimony that the use of cash was part of the business operations and that cash was not appropriately handled. Master's Report and Recommendations at 6; N.T. 05/18/2017 at 160-168, 170-171, 289-292, 317-318, 333-340, 351-354. The portion of the business that occurred off the books will never be known, perhaps even by the parties. All of the above facts support the approach used by Wife's experts and adopted by the Master in valuing the parties' largest asset.

Husband also objects to the 30% discount rate applied by Wife's experts to the value of the business for lack of marketability in their use of a market-based approach. Defendant's Exceptions, ¶ 1b. Dr. Rajan testified that he relied on a chapter of an eminent business valuation publication in addressing the discount and that 30% was reasonable. N.T. 01/19/2017 at 140-141. In light of the lack of competent contrary evidence, this Court agrees. For the above reasons, this Court upheld the Master's decision to adopt the opinion of Wife's experts as to the business valuation using the low end of the range of values presented and a reasonable discount for the lack of marketability.

Likewise, the Master did not err when he determined that 45% of the business was martial property. See Defendant's Exceptions, ¶ 1i. The Divorce Code defines "marital property" as "all property acquired by either party during the marriage..." 23 Pa.C.S. § 3501(a). However, marital property does not include property acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage. 23 Pa.C.S. § 3501(a)(1). Section 3501(b) provides that:

> All real or personal property acquired by either party during
> the marriage is presumed to be marital property regardless

of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (a).

23 Pa. C.S. § 3501(b).

Husband failed to produce any evidence at the hearing or raise any argument in his filings with this Court to rebut the presumption that the 45% of the business acquired by Husband during the marriage was martial. Husband's exception was thus denied.

Additionally, Husband asserts that the Master has erred in failing to recommend the sale of the business as an alternative if Husband was unable to pay the equivalent of Wife's interest and that the Master failed to consider the costs of selling the business. Defendant's Exceptions, ¶¶ 1f, 1j. After review of the evidence and testimony in this matter, there is no basis to grant Husband's exception on this issue and/or remand for further proceedings.

The trial court has broad discretion in fashioning equitable distribution awards. Isralsky v. Isralsky, 824 A.2d 1178, 1184–85 (2003) (citations omitted). Section 3502(a) of the Divorce Code provides,

> [T]he court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets.

23 Pa. C.S. § 3502(b).

Moreover,

> [T]here is no simple formula by which to divide marital property. The method of distribution derives from the facts

of the individual case. The list of factors of [3502(a) ] serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

Fonzi v. Fonzi, 430 Pa. Super. 95, 102–03, 633 A.2d 634, 638 (1993)(citing Semasek v. Semasek, 331 Pa.Super. 1, 11, 479 A.2d 1047, 1052 (1984); rev'd on other grounds, 509 Pa. 282, 502 A.2d 109 (1985).

One of the thirteen factors relevant to the equitable division of marital property includes the expense of sale, transfer, or liquidation associated with a particular asset, which expense need not be immediate and certain. 23 Pa.C.S. §3502(a)(10.2). Although the list of factors is a guideline and no specific weight need be given to one factor, it is clear that the Master took into account the costs associated with the sale, transfer, or liquidation of the family business when he awarded the marital portion of the business to Husband and did not order the sale of the business as an option. It is also clear that the Master weighed the remaining factors in fashioning his equitable distribution award. Master's Report, 8-10.

There is no reason to disturb the Master's recommendation that Husband take the 45% marital interest in the business without an alternative contemplating the sale of the business. As noted above, Husband presented no expert testimony to the value of the business. Husband did not testify to any offers or proposals to sell the business. Husband did not indicate during the hearing that he has retained a broker or agency to sell the business. Rather, Husband testified he would seriously consider an offer if one came in at the high end of Wife's experts' valuation. Id. at 299. Husband also testified that he did not have the money to buy Wife out. Id. at 300. Husband did not have any proposals to present to the Master regarding the business. Id. at 301.

The factual record also supports the Master's consideration of all relevant factors on his decision to assign the marital portion of the business to Husband without recommending a sale. As testified to by Wife, the family business involved minor car repairs, tires, oil changes and inspections and not heavy duty work. N.T. 05/18/2017 at 85. Husband's father started the business and Husband worked there since childhood. Id. at 86, 178, 230-231. Husband received an interest in the business by his Father and inherited additional interest in the business upon Husband's Father's death. Id. at 181, 231-232. Husband eventually purchased his brother's share during the marriage. Id. at 88-89, 183, 187-188, 233. Wife worked in the business until Husband fired her in October 2012. Id. at 103-104, 154-155. At the time of the hearing, Wife was employed as a hotel housekeeping manager at the time of the hearing and as a part-time bartender. Id. at 4, 131. As noted above, Husband believes he is the value underlying the business.

From the record, the Master also heard that Husband is the millstone of the business. There was testimony from the accountant for the business that Husband was facing various issues since firing Wife, including: 1) the discovery of a lack of corporation filings with the Department of State and various resulting tax consequences, Id. at 177-178; 2) sales slumps, Id. at 196-199; 3) employee theft and cash flow issues, Id. at 201, 212-213; and 4) tax audits, Id. at 201-202. Husband testified that he settled the employee theft issue for $75,000 without Wife's knowledge, but this settlement was insufficient to pay all outstanding bills. Id. at 282-284, 287; Master's Report and Recommendations at 6. Husband also stated that he loaned the business money through borrowing on personal credit cards. N.T. 05/18/2017. at 284-285.

Additionally, selling the business would not necessarily serve the objectives of the Divorce Code to "effectuate economic justice between parties… and insure a fair and just determination and settlement of their property rights." 23 Pa.C.S. § 3102(a)(6); See also Schenk v. Schenk, 880 A.2d. 633, 639 (Pa. Super. 2005). Husband's testimony and his argument in his memorandum suggests that a liquidation of the business would occur rather than a sale for fair market value. Per the Master's recommendation, Wife was distributed the equivalent of 22.5% of the fair market value of the business, which included, in part, $56,100 in cash and the marital home. If an alternative was offered in this matter as proposed by Husband, it could actually result in the liquidation of the business to Wife's detriment. In evaluating the circumstances of the case, this alternative would not meet the objective of effectuating economic justice and achieving a just settlement of the parties' property rights. Wife would stand to get less or even nothing and given the litigation, Husband would get the benefit of seeing Wife receive a smaller or zero share of the proceeds. Thus, there is no need to disturb the Master's recommendations.

b. ***The Master Did Not Err When He Valued Items of Personal Property, Awarded Certain Personal Property to Wife, or When He Awarded Cash and Fees to Wife***

Five of Husband's exceptions deal with items of personal property and his objections to valuation of these items. Defendant's Exceptions, ¶¶ 2-4, 5-6. One exception deals with distributing to Wife a pool table and a weight machine. Defendant's Exceptions, ¶ 7. One exception deals with the $56,100 cash distribution to Wife to achieve an equal distribution of marital property. Defendant's Exceptions, ¶ 8. Finally,

Husband objects to the reimbursement of $2,000 of Wife's Master's fees she previously paid. Defendant's Exceptions. ¶ 9.

Husband dedicates three paragraphs of his thirty-six page memorandum to these issues. As noted above, discretion must be exercised and the Court must rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. Childress, supra. When determining the value of marital property, the Court is free to accept all, part or none of the evidence as to the true and correct value of the property and may adopt uncontradicted evidence of value. Id. The value assigned by the Master for three vehicles, various guitars, and used stereo and gaming equipment came from figures elicited during the testimony of the parties. The Master was free to accept the parties' valuations.

Wife testified that the 1992 Camry was worth $500. Id. at 31-32. Husband indicated it was worth $150 at junk value and had not operated in four or five years. Id. at 254. The Master accepted Wife's valuation. Wife also testified that two 1967 Chevrolet Camaros in the garage of the marital residence were worth about $10,000, but were in the process of being restored. Id. at 39-41, 130-131. No appraisal or book value was submitted. Id. at 140. Husband testified that the Camaros were dismantled to the frame and were about 30% restored. Id. at 259-261. Husband said the shell and the parts were worth between $5,000-$8,000. Id. at 260-261. The Master determined the vehicles to be worth $8,000 each for the purposes of equitable distribution because of the dismantled condition. Master's Report and Recommendations at 4. Such an assignment of values to these vehicles by the Master is reasonable given the facts of record and his opportunity to observe the witnesses and weigh credibility.

Wife testified that there were 10-12 name brand guitars purchased during the marriage as Husband collected them. N.T. 05/18/2017 at 43. Wife valued them at $10,000. Id. at 44. Some were purchased new and some cost over a thousand dollars when purchased according to Wife. Id. at 141-142. No appraisal or book value was submitted by either Wife or Husband. Id. at 142. Husband did not contradict Wife's value in his testimony. The Master thus did not err when he adopted the uncontroverted value of the guitars provided by Wife.

Husband argues that the Master erred when he found used stereo and gaming equipment to be worth $10,000. First, this argument is incorrect as to the value assigned. The Master valued the items at $5,000. Master's Report at 4. Second, Wife testified that there were at least a hundred speakers, game systems, and stereo systems collected by Husband during the marriage. N.T. 05/18/2017 at 45, 142-144. Husband offered no counter valuation. The Master thus did not err when he adopted the uncontroverted value of the stereo and gaming equipment provided by Wife.

Husband further argues that the Master erred in distributing a pool table and weight machine to Wife, but Husband failed to provide any argument as to his position. As for Husband's exception on the cash distribution to Wife which was awarded to even out the distribution of assets, the Court has been provided no basis to overturn the Master's findings and recommendations under the facts presented.

Wife also requested fees and expenses from the Master and Wife testified at great length as to the costs and fees she incurred throughout the lengthy litigation, which included discovery motions being filed, sanction proceedings, and protracted support matters. Id. at 65-70. Wife also employed experts at a cost of $7,500 to value the

business which the Master noted was necessary to effect equitable distribution. Id. at 68-69, Master's Report and Recommendations at 10. The Master awarded Wife a reimbursement of Master's fees she paid out as an equitable method to divide the costs of litigation. Id. at 10. After review, there is no reason to disturb the Master's recommendation.

Husband's final exception addressed in this matter concerns snowmobile trailers. Defendant's Exceptions, ¶ 4 ("Master erred when he found that the parties only owned 2 snowmobile trailers, not two." [sic]). A review of the Master's Report shows that one snowmobile trailer and one automobile trailer were valued and distributed by the Master. Master's Report at 4, 9. From a review of Husband's memorandum in support of exceptions, it appears that Husband was arguing that there was some confusion by Wife as to whether there were one or two snowmobile trailers as part of the marital estate. By failing to file a statement of errors, Husband never clarified this exception. In any event, the Master only considered one snowmobile trailer and thus there is no error.

## III.   CONCLUSION

In this Court's review, Husband has failed to show how any of the Master's decisions and recommendations were erroneous. Within this Court's discretion and for the reasons set forth above, this Court denied Defendant's Exceptions to the Master's Report and Recommendations and upheld the Master's determination in an Order dated February 20, 2018.

**BY THE COURT**

_____, J.
JULIA K. MUNLEY

cc: *Written notice of the entry of the foregoing Opinion has been provided to each party pursuant to Pa. R. Civ. P. 236 (a) and (d) by transmitting time-stamped copies to:*

John J. Cerra, Esq.
35 S. Church Street
P.O. Box 513
Carbondale, PA 18407
**Counsel for Plaintiff**

Lawrence J. Moran, Jr., Esq.
Luke P. Moran, Esq.
9 N. Main Street
Suite 4
Pittston, PA 18640
**Counsel for Plaintiff**

Donna DeVita, Esq.
1209 Marion Street
Dunmore, PA 18509
**Counsel for Defendant**